FRANK A. DIPRETE *et al. vs.* JOHN M. VALLONE.

JULY 24, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

138

BAKER, J. This is a bill in equity brought against the respondent to compel him to perform a certain written contract signed by him for the purchase of real estate situated in Cranston in this state. At the hearing of the cause in the superior court on amended bill, answer and replication a question arose which, in the opinion of the justice presiding, was of such doubt and importance and so affected the merits of the controversy that it should be determined by the supreme court before further proceedings in the cause should be had. A decree was therefore entered by him in accordance with the provisions of general laws 1938, chapter 545, §6, certifying said question to this court for its determination.

This cause has been before this court previously, and it was then remanded to the superior court for the addition of necessary parties and for the clarification of the issue of the existence of an actual controversy. *DiPrete* v. *Vallone,* 70 R. I. 286. It would appear that all interested parties are now before the court and that the other issue has been covered. The complainants in the amended bill are the surviving directors, in their individual and representative capacities, of the City Loan Co., Inc., formerly a Rhode Island corporation located in Cranston and engaged in the business of making small loans, and the devisees, legatees and representative of the estate of a deceased director of that

corporation, all its surviving common stockholders, and the heirs, devisees, legatees and representatives of the estates of certain deceased stockholders. In his answer the respondent admitted all the allegations of the amended bill except those in one paragraph which raised primarily a question of law and concerned the question certified to this court.

From the admitted allegations of the amended bill it appears that on January 13, 1937 the stockholders of the City Loan Co., Inc. voted that the corporation cease to do business; that its assets be converted into money and distributed pro rata to its stockholders; and that Luigi Vallone, Frank A. DiPrete, Ralph A. DiPrete and Arcangelo DiPrete be authorized to carry out the liquidation and distribution of the assets of the said corporation and to institute proper proceedings to bring about its dissolution. Pursuant to such vote the above-named complainants started liquidation of the corporation and made a partial distribution of certain assets. They also instituted in the superior court a suit in equity entitled Luigi Vallone v. City Loan Co., Inc., Equity No. 14785, alleging therein that all creditors of and taxes against the corporation had been paid; that the preferred stock had been duly retired; that only the owners of common stock remained as parties in interest; and they prayed that the aforesaid vote of the stockholders of the corporation be affirmed and that the dissolution of the corporation be ordered.

Thereafter on December 22, 1937 a decree to the following effect was entered in the above-entitled equity suit: "1. That the said respondent corporation be hereby dissolved. 2. That the petitioners named herein shall continue to liquidate the assets of the corporation into cash, and shall from time to time distribute the same pro rata among the stockholders." On March 5, 1939 Arcangelo DiPrete, one of the said petitioners, died testate.

By G. L. 1938, chap. 116, art. II, §63, it is provided that "Every corporation whose corporate existence expires by any limitation or is terminated by dissolution or otherwise

shall nevertheless be continued as a body corporate for 3 years after the date of such expiration or termination for the purpose of prosecuting and defending actions, suits or proceedings by or against it, and of enabling it to settle and close its affairs, to dispose of its property and to distribute its assets, but not for the purpose of continuing the business for which it was established . . . ."

On October 27, 1941, more than three years after the dissolution of the corporation had been decreed, certain parcels of land in Cranston still stood on the land records in that city in the name of said corporation as owner and constituted unliquidated assets thereof. On that date the three surviving petitioners entered into a written contract with the respondent to sell to him such real estate for the sum of $5650 and to deliver to him a good marketable title thereto. This is the contract which the complainants are now seeking by the present bill to have specifically performed. The respondent, however, refused to carry out said contract because he questioned the validity and marketability of the title offered him by the surviving petitioners. This situation prompted the following question which has been certified to us by the superior court: Can the surviving directors of a dissolved corporation after a lapse of three years convey title to its real estate by deed?

We entertain considerable doubt as to whether this broad academic question was a proper one for certification upon the facts in this record. In our opinion the cause could and should have been decided on the basis of these facts without the necessity of certifying such question. However, without intending to establish a precedent, we shall entertain the certification as it relates to the particular facts in this cause.

In some jurisdictions statutes have been passed which regulate the procedure to be followed in disposing of the property of a corporation which has ceased to exist, but in this state we have no such statute. By the rule of the common law the effect of the dissolution of a corporation was that its unsold real estate reverted to the original grantor

or his heirs, and all debts due to and from the corporation were extinguished. This common-law rule, however, from early times has never, to our knowledge, been accepted and applied by the courts of this country, especially in connection with private business corporations having a capital stock. 8 Thomp. Corp. (3d ed.) §6506.

In place of the common-law rule some courts of this country, apart from statute, developed what became known as the "trust fund" doctrine. This is a general equitable theory that upon the dissolution of a corporation its property and assets constitute a trust fund for the benefit of its creditors and stockholders. Stated otherwise, under this principle the property of a dissolved business corporation ultimately passed to its stockholders as the actual owners of such property subject, however, to the payment of the corporate debts. 13 Am. Jur. 1197, §1352; 19 C. J. S. 1488, §1730; 8 Thomp. Corp. (3d ed.) §6507. In 47 A. L. R. 1356, the following quotation from 2 Kent, Com. 307, note (b) is cited as a statement of the theory in question: "The sound doctrine now is, as shown by statutes and judicial decisions, that the capital and debts of banking and other moneyed corporations constitute a trust fund and pledge for the payment of the creditors and stockholders, and a court of equity will lay hold of the fund and see that it be duly collected and applied."

Under that theory it is necessary that an interested and proper party ask a court of equity for the application of the trust fund doctrine to the facts of any given case. If such application is proper the equity court will recognize and protect the rights of creditors and stockholders by enforcing the trust, and by designating some person as receiver or some person or persons, frequently an officer or officers of the corporation, to act as trustee or trustees in order to dispose of and distribute the property and assets of the corporation in accordance with equitable principles. In *New York, Bridgeport & Eastern Ry. Co.* v. *Motil,* 81 Conn. 466, the court used the following language, at page 472, in relation to the

matter under consideration: "The custody passed, under well settled equitable principles, from the directors acting as directors for a corporation *de facto,* to the directors acting as trustees for those interested in succession to what had been a corporation *de facto.* The uses for which they thereafter held it were to satisfy any indebtedness which might be due from the supposed corporation, and to transfer the balance, if any, to the shareholders pro rata."

There is substantial authority for the holding that when a private business corporation ceases to exist its property passes by operation of law to its stockholders, who hold it as tenants in common. 13 Am. Jur. 1198, §1352; 19 C. J. S. 1489, §1730 c; 8 Thomp. Corp. (3d ed.) §6541. Such a holding by the stockholders is, however, apparently subject to the intervention of a court of equity and its application of the trust fund doctrine to the facts disclosed. In *Cummington Realty Associates* v. *Whitten,* 239 Mass. 313, the court, at page 325, stated: "It is settled, that upon dissolution, all debts having been paid and discharged and no receiver having been appointed, the corporation's property of every description then belongs to the different stockholders as tenants or owners in common. It is a trust fund which equity will protect for their benefit." For an exhaustive citation of authorities on the principles of law which we have discussed, see annotations in 47 A. L. R. 1355 and 97 A. L. R. 477.

Considering the facts of the instant cause in the light of the legal principles which we have hereinbefore referred to, it appears to us that the stockholders themselves voted in effect to constitute complainants as trustees to liquidate and distribute the assets of the corporation in accordance with law, that these representatives of the stockholders then petitioned equity to intervene and equity did intervene in this matter; and that a decree in equity was entered which in substance authorized the complainants as trustees to perform the duties of that decree for the benefit of the stockholders. While it is true that when equity suit No. 14785

was filed in the superior court, apparently all creditors of the corporation had been paid, nevertheless the second paragraph of the decree entered therein specifically provided that the named petitioners should continue to liquidate the assets of the corporation into cash and from time to time should distribute such cash among its stockholders pro rata. No time limit was placed on this authorization, and clearly it empowered the named petitioners to so act even after the expiration of the three years provided by statute for the winding up of the corporation's affairs, if any further time was necessary to dispose of and to distribute the corporation's assets.

Although the petitioners there were not specifically described in the decree as trustees, nevertheless in our judgment it is clear, under all the circumstances, that they were thereby authorized to act in that capacity for the benefit of the creditors and stockholders. Thus on the facts in the record it is our opinion that equity, through the persons designated by it, took full control over the undisposed-of property of the City Loan Co., Inc., in order to see that such property was distributed equitably to the persons properly entitled thereto. Since the decree in question was entered one of the four persons named to liquidate and distribute the corporate property has died. In our opinion, however, such death did not in any way affect the right of the surviving trustees in equity to perform their duties under the decree.

We find, therefore, on the facts and circumstances appearing in this cause, that the three surviving complainants, in pursuance of the authority given them as trustees under the decree in equity No. 14785, can execute a deed conveying to the respondent a valid and marketable title to the real estate in question that was formerly owned by the City Loan Co., Inc.

The papers in the cause with our decision certified thereon are ordered sent back to the superior court for further proceedings.

*Michael De Ciantis,* for complainants.

*Ralph Rotondo,* for respondent.